OLIVER *v.* HARTZELL.

Opinion delivered February 22, 1926.

1. LANDLORD AND TENANT—IMPLIED WARRANTY OF SUITABLENESS.—In a lease of the basement of a hotel for use as barber shop, where there was no express warranty of the fitness of the premises for use as a barber shop, there was no implied warranty of suitableness of the premises, and, in the absence of fraud or concealment, the lessee took his lease at his peril.

2. LANDLORD AND TENANT—IMPLIED WARRANTY—UNCOMPLETED BUILDING.—The rule that there is no implied warranty of suitableness in a lease of a hotel basement for a barber shop applies though the building was not completed when the lease was entered into, if the work had progressed sufficiently near to completion to enable the lessee to ascertain its suitableness for use as a barber shop.

Appeal from Arkansas Chancery Court, Northern District; *John M. Elliott,* Chancellor; reversed.

*Phil McNemer,* for appellant.

*W. A. Leach,* for appellee.

McCULLOCH, C. J. Appellant is the owner of a hotel building in Stuttgart, Arkansas, which he constructed in the year 1922 and the early part of 1923, and on January 17, 1923, he entered into a contract with appellee for the

lease to the latter of a large room in the basement for use
as a barber shop. The lease was for a term of ten years,
beginning with the completion of the hotel building, and
specified a monthly rental of seventy-five dollars. The
contract contained a stipulation that the lessor was to
furnish heat and water and install necessary shelving
in bathrooms and storage closet. The contract con-
tained no express warranty as to the fitness of the room
for the intended use, nor did it contain any agreement
on the part of the lessor to make repairs. The building
was not complete at the time the contract between the
parties was entered into. The basement room leased to
appellee was incomplete to the extent that the concrete
floor had not been laid and the plastering had not been
put on part of the wall. Appellee moved in under the
lease on March 1 and occupied the room as a barber shop
until the latter part of July, 1923, when he moved out,
and refused to pay the rent accruing thereafter.

Appellant instituted this action at law against appel-
lee to recover rents, and appellee filed his answer and
cross-complaint, alleging breach of the contract of rental
with reference to the fitness of the room for occupancy
as a barber shop. He also alleged in his cross-complaint
that, on account of the condition of the floor, water seeped
into the room after heavy rains, and that appellant failed
to furnish proper appliances so as to afford sufficient
hot water for use in the operation of the barber shop.
He prayed for cancellation of the contract, and on his
motion the cause was transferred to the chancery court,
and proceeded there to a final decree dismissing appel-
lant's complaint for want of equity, and granting the
relief to appellee prayed for in his cross-complaint.

The proof adduced in the case showed that after
heavy rains there was a seepage of water into the base-
ment occupied by appellee so as to cover a space of
about twelve feet between two of the barber's chairs to
a depth of half an inch to an inch. There is a conflict
as to the depth of the water which seeped in, and some

little conflict as to the frequency of the occurrences. Appellee's testimony was to the effect that the water seeped in eight or ten times during the five months he occupied the room. Witnesses introduced by appellee also testified that at times water and gas "belched up" from the sewer connections, especially after rains, but there was no allegation in the complaint with respect to this defect, and there was nothing to put appellant on notice that that was to be made an issue in the case, hence it was not noticed by the chancellor in his findings of fact, and will not be noticed here. There was also a conflict in the testimony as to the issue whether or not appellant had failed to furnish hot water. It is undisputed that there was some trouble for a time after appellee moved into the room and began operation of the barber shop about a sufficient quantity of hot water, and that appellee made complaint to appellant about it, and that the latter took steps to repair the defect. The hot water pipe was changed to a direct connection with the boiler, and appellant testified that no further complaint was made to him about it. The chancellor made no finding upon the issue as to failure to furnish hot water, and we must assume from the fact that he based his decision on other grounds that he found that the charge in the complaint in that respect was not sustained by the evidence. We do not think that the preponderance of the evidence is against the finding of the chancellor on that issue.

The reasons stated by the chancellor for his decree are that there was an implied warranty as to the fitness of the room for use as a barber shop, and that the room was unfit for that purpose on account of the frequent flooding of the floor with water. There was no express warranty of the fitness of the premises for use as a barber shop, and, according to the great weight of authority, there is no implied warranty of the suitableness of leased premises for the intended use. There is some conflict in the authorities, but this court has taken a definite stand

on the question in the case of *Little Rock Ice Co.* v. *Consumers' Ice Co.,* 114 Ark. 532. In the opinion, after reviewing the authorities on the subject, it was said: "In other words, in the absence of fraud or concealment, the tenant leases at his peril, and the rule in the nature of *caveat emptor* throws upon the lessee the responsibility of examining the demised premises for defects and providing against their consequences, before he enters into the lease." It is contended, however, that the rule of *caveat emptor* does not apply where the building is incomplete at the time the lease is entered into, and the lessee has no opportunity to make examination for defects. That exception may be a sound one in case the building is so far lacking in completeness that the lessee has no opportunity to determine its fitness for the intended use, and that thereafter faulty construction occurs so as to render the premises unfit. The mere fact that the building is not entirely complete affords no reasonable grounds for refusing to apply the rule of *caveat emptor,* if the work has progressed sufficiently near to completion to afford an opportunity to the lessee to ascertain its suitableness for the use for which he intended it. We think that is the true test, and it is the one sustained by authorities. *Wilkinson* v. *Clauson,* 29 Minn. 91; *Bently* v. *Taylor,* 39 N. W. (Iowa) 267. The application of this rule leads to the conclusion that there was no implied warranty in the present case. Appellee had an opportunity to inspect the premises and did so, and he could see just what the room would be when complete. There is no proof of any misrepresentation, nor is there any proof that there was any faulty construction. The room was completed, for aught that appears to the contrary, in accordance with the plans and the indications which appellee necessarily observed when inspecting the room. He knew that there was nothing more to be done to the floor than to spread the concrete—no further provision for keeping out seep water—so, when he entered into the lease, he took his

chances on having the water seep through. In other words, we find nothing in the facts of this case to take it out of the operation of the rule established by this court, as well as by most of the other courts, that in a lease of a building or a portion thereof there is no implied warranty of fitness for the use to which it is intended.

The chancery court reached the wrong conclusion in the case, and the decree is reversed, and the cause remanded with directions to render a decree in favor of appellant for the amount of accrued rent.